UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re:

    Jeffrey L. Steers,

        Debtor.

Case No. 13-35454-MDM
(Chapter 11)

---

**PLAN OF REORGANIZATION OF THE DEBTOR
AS OF FEBRUARY 3, 2014**

---

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| ARTICLE II | DESIGNATION OF CLASSES OF CLAIMS | 4 |
| ARTICLE III | TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS | 5 |
| ARTICLE IV | TREATMENT OF CLASSIFIED CLAIMS | 5 |
| ARTICLE V | MEANS OF IMPLEMENTATION OF THE PLAN | 7 |
| ARTICLE VI | EXECUTORY CONTRACTS; RESOLUTION OF CLAIM DISPUTES | 9 |
| ARTICLE VII | DISCHARGE AND CONFIRMATION INJUNCTION | 9 |
| ARTICLE VIII | CONDITIONS TO CONFIRMATION AND EFFECTIVENESS | 9 |
| ARTICLE IX | RETENTION OF JURISDICTION BY THE COURT | 9 |
| ARTICLE X | CLOSING AND REOPENING CASE | 10 |

Mark L. Metz
Olivier H. Reiher
Leverson & Metz S.C.
225 E. Mason St., Suite 100
Milwaukee, WI 53202
Phone: (414) 271-8502
Fax: (414) 271-8504
E-mail: mlm@levmetz.com

Jeffrey L. Steers, the debtor in the above-captioned case, hereby proposes the following plan of reorganization pursuant to § 1121(a) of the United States Bankruptcy Code.

## ARTICLE I
## DEFINITIONS

For the purposes of this Plan, the following terms shall have the respective meanings set forth below:

1.1 **Definitions Identifying Parties.**

    (a)    "Debtor" means Jeffrey L. Steers, the debtor in this Chapter 11 case.

    (b)    "Cynthia" means Cynthia Steers, the Debtor's wife, who is a non-filing spouse in this bankruptcy case.

    (c)    "ACU" means Aurora Credit Union, a credit union headquartered in Milwaukee, Wisconsin, which holds Claims secured by first and second mortgages against the Fox Point Property, as well as Claims secured by the 2007 Mazda and the 2007 Nissan.

    (d)    "Wells Fargo" means Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., which holds Claims secured by first and second mortgages against the Florida Property.

    (e)    "IRS" means the Internal Revenue Service of the United States.

    (f)    "Local Taxing Authorities" means Milwaukee County, Wisconsin, and the Village of Fox Point, Wisconsin, and any other governmental unit with authority to assess or collect real estate taxes secured by a Lien against the Fox Point Property.

1.2 **Definitions Relating to Assets.**

    (a)    "Fox Point Property" means the real property located at 7845 North Boyd Way in Fox Point, Wisconsin, which is owned by the Debtor and was until recently his homestead.

    (b)    "Florida Property" means the real property located at 349 Royal Tern Road South, in Ponte Vedra Beach (St. Johns County), Florida, which is jointly owned by the Debtor and Cynthia as tenants by the entireties.

    (c)    "2007 Mazda" means the 2007 Mazda CX-7, having approximately 88,000 miles, jointly owned by the Debtor and his son, Alexander Steers.

    (d)    "2007 Nissan" means the 2007 Nissan Xterra, having approximately 62,000 miles, jointly owned by the Debtor and his son, Andrew Steers.

**1.3 Definitions Relating to Claims.**

(a) "Claim" means any right in existence on the Confirmation Date against the Debtor to (i) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or (ii) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(b) "Secured Claim" means a Claim arising on or before the Petition Date that is secured by a valid Lien on property in which the Debtor's estate has an interest which is not void or voidable under any state or federal law, including the provisions of the Code.

(c) "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

(d) "Unsecured Claim" means any Claim against the Debtor that is not a Secured Claim.

(e) "Property Tax Claims" means all Secured Claims of Local Taxing Authorities for property taxes, including any interest and penalties, assessed against and secured by a Lien against the Fox Point Property.

(f) "ACU Mortgage Claims" means the Secured Claims of ACU for loans to the Debtor that are secured by mortgages in favor of ACU against the Fox Point Property.

(g) "ACU Vehicle Claims" means the Secured Claims of ACU for purchase-money loans secured by the 2007 Mazda and the 2007 Nissan.

(h) "Wells Fargo Secured Claims" means the Secured Claims of Wells Fargo for loans secured by mortgages in favor of Wells Fargo against the Florida Property.

(i) "IRS Claims" means all Claims of the IRS against the Debtor, whether individually or jointly with Cynthia, for unpaid federal income taxes, including all interest, penalties and other fees or charges assessed in connection with such taxes; provided, however, that "IRS Claims" does not include any federal income tax liabilities for which Cynthia is solely responsible.

(j) "DSO Claims" means the claims of Cynthia for any domestic support obligations entitled to priority under § 507(a)(1) of the Code, as established in and limited by the MSA.

(k) "Administrative Claim" means a claim for administrative expenses under § 503(b) of the Code that is entitled to priority in payment pursuant to § 507(a)(2) of the Code.

(l) "Allowed Claim" shall mean:

  (I) a Claim (other than an Administrative Claim), proof of which is filed on or before the date designated by the Court as the last date for filing proofs of claim with respect to such Claim, or which has been or hereafter is scheduled by the Debtor as liquidated in amount and not disputed or contingent and in either case, with respect to any such Claims, (x) as to which no objection to the allowance thereof has been filed within the applicable period of limitation fixed by the Code, the Federal Rules of Bankruptcy Procedure, or an order of the Court, or (y) as to which any objection has been determined by a final order; or

  (II) an Administrative Claim

   [A] an application for payment which, if required under the Code or by order of the Court, has been filed with the Court on or before any applicable deadlines set by the Court, and which application has been approved and allowed by final order; or

   [B] that is not subject to dispute and has become due and owing in the ordinary course of the Debtor's financial affairs; or

   [C] that arises out of the assumption of an executory contract pursuant to § 365 of the Code, which assumption has been approved by a final order of the Court, including the Confirmation Order.

**1.4 Other Definitions.**

(a) "Code" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

(b) "Plan" means this Plan of Reorganization, as modified in accordance with the terms hereof or in accordance with the Code.

(c) "Court" means the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Bankruptcy Court"), in which the Debtor's Chapter 11 case is pending pursuant to referral of jurisdiction by the United States District Court for the Eastern District of Wisconsin, and any court having competent jurisdiction to enter final orders or judgments, conduct *de novo* review of issues, or withdraw any portion of this captioned proceeding from the Bankruptcy Court, and any court having competent jurisdiction to hear appeals or certiorari proceedings from any of the foregoing.

(d) "Confirmation Order" means the order of the Court confirming the Plan.

(e) "Confirmation Date" means the date on which the Confirmation Order is entered by the Clerk of the Court.

(f) "Effective Date" means the later of (i) the third business day after all conditions to effectiveness of the Plan have been satisfied, or (ii) the tenth business day after the Confirmation Date.

(g) "Petition Date" means November 27, 2013, the date on which the Debtor filed his petition for relief commencing this Chapter 11 case.

(h) "MSA" means the Mediated Settlement Agreement entered into between the Debtor and Cynthia on April 22, 2008, which definitively establishes the scope, nature, duration, conditions and limitations of the parties' legal duties and obligations to one another and to their minor children, a copy of which is attached as Exhibit A to this Plan.

(i) "Avoidance Actions" means any claims or causes of action of the Debtor's estate under or pursuant to §§ 544 through 553 of the Code, inclusive.

(j) "Recoupment Rights" means any and all rights of the Debtor to recoup or otherwise recover, whether directly or by setoff, any funds previously collected by Cynthia in excess of the amounts to which she is or was entitled under the MSA, including (without limitation) child support payments she collected from the Debtor for time periods after the supported child had reached the age of emancipation as set forth in the MSA.

(k) "Causes of Action" means, whenever arising, all rights, claims, and causes of action accruing to the Debtor or the Debtor's estate, before, on, or after the Petition Date, including, without limitation, all Avoidance Actions and Recoupment Rights.

**1.5 Incorporation of Code Definitions.**

Any terms that are not specifically defined in this Plan but are defined in the Code shall have the meanings given to them in the Code.

### ARTICLE II
### DESIGNATION OF CLASSES OF CLAIMS

Claims are hereby designated in the following classes:

**2.1** *Class 1* consists of the Property Tax Claims.

**2.2** *Class 2* consists of the ACU Mortgage Claims.

**2.3** *Class 3* consists of the Wells Fargo Secured Claims.

**2.4** *Class 4* consists of the IRS Claims.

**2.5** *Class 5* consists of all DSO Claims.

**2.6** *Class 6* consists of the ACU Vehicle Claims.

**2.7** *Class 7* consists of all other Claims against the Debtor.

# ARTICLE III
# TREATMENT OF CERTAIN UNCLASSIFIED CLAIMS

This Plan does not classify certain Claims having priority as specified in § 507 of the Code. Those Claims shall be treated as follows:

**3.1** **Administrative Priority Claims.** Except to any extent that a holder of an Allowed Administrative Claim has been paid prior to the Effective Date or that the holder of such Claim has agreed to a different treatment of its Claim, the Debtor shall pay each Allowed Administrative Claim in full on the Effective Date. The Debtor shall reserve cash sufficient to pay any Administrative Claim that is not an Allowed Claim as of the Effective Date. As soon as practicable after an objection to Administrative Claim has been resolved, the Debtor shall promptly pay the Allowed amount of such Administrative Claim in full.

**3.2** **U.S. Trustee Fees.** Fees of the United States Trustee payable under 28 U.S.C. § 1930 shall be paid in full on the Effective Date in accordance with 11 U.S.C. § 1129(a)(12).

# ARTICLE IV
# TREATMENT OF CLASSIFIED CLAIMS

**4.1** **Class 1 (Property Tax Claims).** All Property Tax Claims will be paid in full, in a single lump-sum payment, within 18 months after the Confirmation Date. Prior to such payment, the Local Taxing Authorities shall retain all of the legal, equitable and contractual rights to which the Property Tax Claims entitle them. The Confirmation Order shall not operate to stay, alter or limit in any way the exercise of those rights by the Local Taxing Authorities. Class 1 Claims are *unimpaired*.

**4.2** **Class 2 (ACU Mortgage Claims).** The ACU Mortgage Claims will be paid in full, in a single lump-sum payment, within 18 months after the Confirmation Date. Prior to such payment, the Debtor may continue making monthly payments of principal and interest to ACU pursuant to the terms of the underlying notes or any other terms to which the Debtor and ACU may agree. ACU shall at all times retain all of the legal, equitable and contractual rights to which the ACU Mortgage Claims entitle it. The Confirmation Order shall not operate to stay, alter or limit in any way the exercise of those rights by ACU. Class 2 Claims are *unimpaired*.

**4.3** **Class 3 (Wells Fargo Secured Claims).** The Wells Fargo Secured Claims are fully secured by mortgages against the Florida Property. They will be paid in full – including all interest, fees and other amounts chargeable – in a single lump-sum payment from proceeds of a sale of the Florida Property within 15 months after the Confirmation Date. The Confirmation Order shall enjoin Wells Fargo from any actions to collect its Secured Claims or enforce its Liens pending such sale. On the first Monday that is more than 15 months after the Effective Date, the confirmation injunction shall terminate automatically, and Wells Fargo may then exercise all of the legal, equitable and contractual rights to which the Wells Fargo Secured Claims entitle it. Class 3 Claims are *impaired*.

**4.4 Class 4 (IRS Claims).** The IRS Claims will be paid in full as follows:

(a) Between the Effective Date and sale of the Florida Property, the Debtor will make regular payments to the IRS in the amount of $5,000 on the first business day of each April, July, October and January.

(b) Upon sale of the Florida Property, the IRS will be paid the lesser of (i) the full amount then outstanding on the IRS Claims, or (ii) the net proceeds available from the sale, after payment of closing costs, the Wells Fargo Secured Claims and any Liens having priority over those of the IRS.

(c) Beginning (i) after sale of the Florida Property, but (ii) no later than March 2016, the Debtor will make regular payments to the IRS on or before the 15th day of each month, in an amount sufficient to pay in full, prior to November 27, 2018, any remaining balance of the IRS Claims, with interest at the rate specified in 26 U.S.C. § 6621(a)(2).

Class 4 Claims are *impaired*, but their treatment complies with the requirements set forth in § 1129(a)(9)(C) and (D) of the Code.

**4.5 Class 5 (DSO Claims).** The Debtor will fully and timely comply with all of his ongoing financial and other obligations to Cynthia under the MSA. By way of example, and without limiting the generality of the foregoing, the Debtor shall:

(a) pursuant to ¶11 of the MSA, remit $16,000 per month as "permanent alimony" to Cynthia by means of an appropriate payroll deduction;

(b) pursuant to ¶12 of the MSA, maintain $500,000 in life insurance naming Cynthia as beneficiary for so long as he has an alimony obligation;

(c) pursuant to ¶14 of the MSA, cooperate in the sale of the Florida Property "as soon . . . as is commercially reasonable" through an acceptable real estate agent; and

(d) pursuant to ¶23 of the MSA, indemnify Cynthia against any payment for the IRS Claims, subject to the Recoupment Rights.

Cynthia shall at all times retain all of her legal rights as established in and limited by the MSA. Class 5 Claims are *unimpaired.*

**4.6 Class 6 (ACU Vehicle Claims).** The Debtor will pay the ACU Vehicle Claims according to their terms. ACU shall at all times retain all of the legal, equitable and contractual rights to which the ACU Vehicle Claims entitle it. The Confirmation Order shall not operate to stay, alter or limit in any way the exercise of those rights by ACU. Class 2 Claims are *unimpaired.*

**4.7 Class 7 (General Unsecured Claims).** Unsecured Claims not included in Classes 1 through 6 are *impaired*. The holders of Class 7 Claims shall have the choice between:

(a) receiving full payment of their Allowed Claims, together with interest at the rate of 5% per annum accruing from the Confirmation Date, all in a single lump-sum payment made on the same date as the final payment on the IRS Claims; -or-

(b) receiving a single lump-sum payment equal to 75% of their Allowed Claims on the later of (a) the fifth business day after the Effective Date, or (b) the tenth business day after such Claim becomes an Allowed Claim.

## ARTICLE V
## MEANS OF IMPLEMENTATION OF THE PLAN

**5.1 General Explanation of Means for Making Plan Payments.** On the Effective Date, all retained property of the estate of the Debtor shall revest in the Debtor, except as otherwise provided in this Plan. As more fully described below, the Debtor will use funds from three sources – proceeds derived from sale of the Fox Point Property, proceeds derived from sale of the Florida Property, and his disposable income – to make the payments required by the Plan.

**5.2 Sale of the Fox Point Property.**

(a) <u>General Procedure</u>. The Debtor estimates that the Fox Point Property has a fair market value of approximately $350,000. He will retain a reputable real estate broker to market the Fox Point Property and sell it within 18 months after the Confirmation Date. The net proceeds from that sale will be used to pay the Property Tax Claims (Class 1) and the ACU Mortgage Claims (Class 2) in full. Any remaining proceeds from sale of the Fox Point Property will be used to fund the Debtor's other obligations under the Plan.

(b) <u>Secured Creditor Rights Pending Sale</u>. During the time that the Debtor is marketing the Fox Point Property, the Local Taxing Authorities and ACU will each retain and may exercise all of their rights with respect to collection of their Claims or enforcement of their Liens. In order to forestall any action against the Fox Point Property, the Debtor may choose to continue making monthly payments of principal and interest to ACU in accordance with the terms of the underlying mortgage notes until such time as the Fox Point Property can be sold.

**5.3 Sale of Florida Property.**

(a) <u>General Procedure</u>. The Debtor estimates that the Florida Property has a fair market value of approximately $1.0 million. A sale of the Florida Property will generate sufficient proceeds to pay the Wells Fargo Secured Claims (Class 3) in full, and to pay most or all of the IRS Claims (Class 4), which are secured by Liens against the Florida Property. Accordingly, after the Confirmation Date, the Debtor and Cynthia will retain a reputable real estate broker to market the Florida Property and sell it within 15 months

(b) <u>Sale Is Required by the MSA</u>. Sale of the Florida Property at this time is consistent with and mandated by the MSA. Paragraph 14 of the MSA requires both the Debtor and Cynthia to "cooperate as necessary to effectuate the sale," and further dictates that "[Cynthia] shall maintain the [Florida Property] in a neat and showable condition." Moreover, ¶27 of the MSA specifies that both the Debtor and Cynthia "shall upon the request of the other execute such documents as are reasonably necessary to implement any provision" of the MSA.

(c) <u>Procedure If Cynthia Does Not Cooperate</u>. The Florida Property will remain property of the estate following confirmation of the Plan and until sold. In the event that Cynthia fails or refuses to cooperate and perform her obligations under the MSA relating to sale of the Florida Property, the Debtor will file an adversary proceeding in the Bankruptcy Court requesting an order that authorizes him to sell both the estate's interest and Cynthia's interest in the Florida Property pursuant to § 363(h) of the Code. If the Debtor is forced to bring such an action against Cynthia, he may request additional relief, including exercise of his Recoupment Rights or adjustment of his own obligations under the MSA.

(d) <u>Use of Sale Proceeds</u>. The proceeds from sale of the Florida Property will be used first to pay the Wells Fargo Secured Claims (Class 3) in full. Any remaining proceeds will be paid to the IRS on account to the IRS Claims (Class 4).

(i) If the proceeds from sale of the Florida Property are insufficient to pay the IRS Claims in full, the remaining balance owed on the IRS Claims will be paid from the Debtor's disposable income in accordance with Section 4.4(c) above.

(ii) If the proceeds from sale of the Florida Property are sufficient to pay all Wells Fargo Secured Claims and all IRS Claims in full, any remaining proceeds shall be paid to Cynthia on account of her right to equity in the Florida Property, as outlined in the MSA.

(e) <u>Secured Creditor Rights Pending Sale</u>. During the time that the Florida Property is being marketed for sale, Wells Fargo and the IRS will each be enjoined by the Confirmation Order from enforcing their respective Liens against the Florida Property, which shall include a stay of the foreclosure action commenced by Wells Fargo in Florida state court prior to the Petition Date.

(f) <u>Termination of the Confirmation Injunction</u>. The Confirmation Injunction will automatically terminate on the first Monday that is more than 15 months after the Effective Date. If the Florida Property has not previously been sold, Wells Fargo and the IRS will at that time be free to exercise all of their rights with respect to the Florida Property and enforce their Liens in accordance with applicable law.

**5.4 Use of Disposable Income.** The Debtor currently earns a substantial annual salary, and expects to have enough disposable income throughout the period of this Plan to meet any obligations that are not covered by sale of the Fox Point Property and the Florida Property.

**5.5 Causes of Action Retained and Preserved.** All Causes of Action shall be retained by the Debtor and preserved. Following the Effective Date, the Debtor may pursue, litigate, and/or compromise all Causes of Action without further order of the Court. In addition, all rights, defenses, claims, setoffs and recoupments with respect to any Claim against the Debtor or his estate are retained and preserved and may be asserted by the Debtor as provided in this Plan or under applicable law.

**5.6 Duration of Plan.** The term of this Plan shall be as long as is necessary for all Allowed Claims to be paid in full, but shall not exceed five years from the Petition Date.

## ARTICLE VI
## EXECUTORY CONTRACTS; RESOLUTION OF CLAIM DISPUTES

**6.1 Assumption of Leases and Executory Contracts.** Any executory contract or unexpired lease to which the Debtor is a party shall be deemed *assumed* as of the Effective Date, unless earlier assumed or rejected by the Debtor.

**6.2 Resolution of Claim Disputes.** In the event the Debtor and a creditor are unable to agree on the amount of a Claim, the Debtor will file an objection to the creditor's Claim within 60 days after the Confirmation Date. After the Court determines the allowed amount of any disputed Claim, the Allowed Claim will be paid as described in Articles III and IV of this Plan.

## ARTICLE VII
## DISCHARGE AND CONFIRMATION INJUNCTION

**7.1 General Discharge Provision.** Upon the completion of all payments as provided in Articles III and IV of this Plan, the Debtor shall be discharged of all Claims against him.

**7.2 Confirmation Injunction and Limitations.** Until the completion of all payments as provided in Articles III and IV, and except as otherwise provided in this Plan, the holders of Claims in Classes 3, 4, 5, and 7 shall be enjoined through the Confirmation Order from taking any action to collect on their Claims or to enforce their Liens. However, this provision shall not prevent the holder of any Allowed Claim from taking any action to enforce the terms of this Plan.

**7.3 Special Discharge Provision.** At any time after confirmation of this Plan and notwithstanding the Debtor's failure to complete the payments required in this Plan, the Court may grant the Debtor a discharge pursuant to § 1141(d)(5)(B) of the Code.

## ARTICLE VIII
## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

**8.1 Condition to Confirmation.** Confirmation of the Plan shall not occur unless the Bankruptcy Court shall have entered a Confirmation Order.

**8.2 Conditions to Effectiveness.** The Plan shall not be effective unless the entered Confirmation Order (a) has not have been stayed, and (b) has become final and non-appealable.

## ARTICLE IX
## RETENTION OF JURISDICTION BY THE COURT

After the Confirmation Date, the Court may retain jurisdiction for the following purposes, or as otherwise permitted by law:

**9.1 Objections to Claims.** To hear and determine any objections to the allowance of Claims.

**9.2 Fee Applications.** To hear and determine any and all applications for compensation of professional services and disbursements.

**9.3 Pending Matters.** To hear and determine any and all pending motions, applications, adversary proceedings, and other contested matters not resolved by the Plan.

**9.4 Modification of Plan.** To modify the Plan to the extent permitted by the Plan and the applicable provisions of § 1127 of the Code.

**9.5 Enforcement of Payments, Rights, and Interests.** To enforce the terms and provisions of payments, rights, and interests required or created by the Plan.

**9.6 Provisions of Plan, Confirmation Order, and Code.** To enter such orders as may be necessary to consummate, interpret and effect the provisions of the Plan and the Confirmation Order, or as may be otherwise required by the Code.

## ARTICLE X
## CLOSING AND REOPENING CASE

**10.1 Closing.** Upon substantial consummation of the Plan, the Debtor may apply for an order closing the case, and if appropriate pursuant to § 350(a) of the Code, the Court shall close the case.

**10.2 Reopening.** The case may be reopened pursuant to § 350(b) of the Code to administer assets, for the entry of an order determining that the Debtor has been discharged of Claims, to grant the Debtor other appropriate relief, or for other cause.

LEVERSON & METZ S.C.

225 E. Mason St., Suite 100  /s/ Mark L. Metz
Milwaukee, WI 53202  Mark L. Metz
(414) 271-8502  Olivier H. Reiher
(414) 271-8504 (fax)  Attorneys for the Debtor, Jeffrey L. Steers
E-mail: mlm@levmetz.com